### HELLS CANYON PRESERVATION COUNCIL, Plaintiff,

v.

**Robert RICHMOND, in his official capacity as Wallowa–Whitman National Forest Supervisor; Mike Espy, in his official capacity as Secretary of Agriculture; U.S. Forest Service, Defendants,**

**Northwest Powerboaters Association, Inc., an Idaho nonprofit corporation; Western Whitewater Association, an Idaho nonprofit association; R Y Timber, Inc., an Idaho corporation; Wallowa County, a public entity; Boise Cascade Corp., a Delaware corporation; Ellingson Lumber Co., an Oregon Corporation; Northwest Forestry Association, an Oregon nonprofit corporation; Northwest Forest Resource Council, an Oregon nonprofit corporation, Defendant–Intervenors.**

Civ. No. 92–1432–ST.

United States District Court, D. Oregon.

Dec. 9, 1993.

Gary Kahn, Reeves, Kahn & Eder, Portland, OR, for plaintiff Hells Canyon Preservation Council.

Jack C. Wong, U.S. Atty., Thomas C. Lee, Larry A. Brown, Val J. McLam Black, Sp. Asst. U.S. Atty., Office of Gen. Counsel, U.S. Dept. of Agriculture, Portland, OR, for defendants Robert Richmond, Mike Espy, and U.S. Forest Service.

Michael E. Hagland, Scott W. Horngren, Haglund & Kirtley, Portland, OR, for defendant-intervenors R Y Timber, Inc., Wallowa County, Boise Cascade Corp., Ellingson Lumber Co., Northwest Forestry Ass'n, and Northwest Forest Resource Council.

Jeffery W. Ring, Eric R. Todderud, Heller, Ehrman, White & McAuliffe, Portland, OR, for defendant-intervenors Northwest Powerboaters Ass'n, Inc. and Western Whitewater Ass'n.

## OPINION

STEWART, Magistrate Judge:

### INTRODUCTION

This is an action brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551—559 and the Hells Canyon

National Recreation Area Act ("HCNRA Act"), 16 U.S.C. §§ 460gg to –13, to obtain declaratory and injunctive relief requiring defendant the United States Forest Service ("Forest Service") to promulgate rules governing uses of the Hells Canyon National Recreation Area ("HCNRA"). Two individual defendants [1] are named, as are six defendant intervenors.[2]

Plaintiff, the Hells Canyon Preservation Council ("HCPC"), is a non-profit corporation dedicated to the preservation of the Hells Canyon area in its natural condition. Plaintiff and its members use the HCNRA for recreational, scientific, and commercial purposes. HCPC alleges jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201 (authorizing declaratory relief), and 28 U.S.C. § 2202 (authorizing injunctive relief). Defendants and defendant-intervenors dispute plaintiff's standing to bring this action. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with F.R.C.P. 73 and 28 U.S.C. § 636(c). See Consent forms in Civ. No. 92–1432–ST (docket # 61–64).

Two motions are now before me, including (1) plaintiff's motion for summary judgment (docket # 49); and (2) defendant-intervenors Northwest Powerboaters Association, Inc. and Western Whitewater Association's motion for summary judgment (docket # 44).

## STANDARDS

F.R.C.P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Id.* at 324,

106 S.Ct. at 2553. A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir.), *cert. denied*, 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). The court must view the inferences drawn from the facts in the light most favorable to the nonmoving party. Thus, reasonable doubts about the existence of a factual issue should be resolved against the moving party. *Id.* at 630–631. However, when the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than would otherwise be required. *California Architectural Bldg. Prods. v. Franciscan Ceramics, Inc.* 818 F.2d 1466, 1470 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). The Ninth Circuit has stated, "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id.* at 1468.

## DISCUSSION

### I. Background

Congress enacted the HCNRA Act in 1975, establishing the Hells Canyon National Recreation Area, located generally along the Snake River in Eastern Oregon and Western Idaho. The HCNRA Act required the Secretary of Agriculture ("Secretary") to promulgate a Comprehensive Management Plan ("CMP") for the HCNRA to provide for a broad range of land uses and recreational opportunities. 16 U.S.C. § 460gg–5(a). The Forest Service adopted a CMP for the HCNRA after receipt of public comment and preparation of an Environmental Impact Statement.

---

**1.** Individual defendants are Wallowa–Whitman National Forest Supervisor, Robert Richmond and Mike Espy, Secretary of the United States Department of Agriculture.

**2.** Defendant-intervenors include Northwest Powerboaters Association, Inc., Western Whitewater Association, RY Timber, Inc., Wallowa County, Boise Cascade Corp., Ellingson Lumber Co., and Northwest Forest Resource Council.

In addition to the requirement that the Secretary promulgate a CMP, the HCNRA Act requires the Secretary to "promulgate . . . such rules and regulations as he deems necessary to accomplish the purposes of [the HCNRA Act which] shall include but are not limited to [standards and provisions governing certain uses of the HCNRA]." 16 U.S.C. § 460gg–7(a)—(e). In 1989, the Ninth Circuit Court of Appeals held that this section, rather than giving the Secretary discretion, mandated that the Secretary "promulgate nonduplicative regulations of the sort described by [Section 10]." *Oregon Natural Resources Council v. Lyng*, 882 F.2d 1417, 1427 (9th Cir.1989), *amended on other grounds*, 899 F.2d 1565 (9th Cir.1990) ("*ONRC v. Lyng*").

In response to this decision, the Forest Service adopted an "interim rule" applicable to public lands in the HCNRA. The "interim rule" was adopted without prior notice and comment and was made effective immediately upon publication, but was open to a subsequent sixty-day comment period. The "interim rule" calls for management of public lands in the HCNRA in a manner consistent with the CMP and with existing regulations of general applicability to Forest Service lands. 36 C.F.R. § 292.40–.43. The "interim rule" does not address use or development of private lands in the HCNRA.

After adopting this "interim rule", the Forest Service solicited and received comments, including comments from plaintiff HCPC. On or about November 3, 1992, the Forest Service published two notices of proposed rule making in the Federal Register. The first notice, published at 57 Fed.Reg. 51103, announced the Forest Service's intent to issue regulations governing uses of private lands in the HCNRA. The Notice of Proposed Rulemaking was scheduled for publication in March of 1993, with the comment period to close in September, 1993. The second notice announced the Forest Service's intent to adopt rules governing federal lands in the HCNRA. The proposed rules were scheduled to become effective in June, 1993. 57 Fed.Reg. 51108. Prior notices with earlier deadlines have been published. *See, e.g.* 54 Fed.Reg. 44466 (October 30, 1989); 55 Fed.Reg. 15983 (April 23, 1990). None of these deadlines have been met.

## II. *The Pending Claims and Defenses*

The HCPC alleges seven separate claims against defendants. Each of HCPC's claims charge that the Forest Service has failed to promulgate regulations addressing specific subsections of 16 U.S.C. § 460gg–7(a) to (e) (Section 10 of the HCNRA Act), or that the Forest Service has improperly deferred to the CMP for control of the activities specifically identified in those subsections.

HCPC seeks a declaration that (1) the "interim rule" does not comply with the APA's requirement of notice and comment rulemaking and does not constitute a final rule or regulation for purposes of the HCNRA Act; (2) the "interim rule" improperly defers to the CMP for regulation of activities within the HCNRA; and (3) the "interim rule" does not satisfy the requirements of Section 10 of the HCNRA Act. In addition, HCPC seeks (1) an order requiring the Forest Service to engage in notice and comment rulemaking and to promulgate final regulations as required by the HCNRA Act; and (2) injunctive relief enjoining a number of activities in the HCNRA until such time as final regulations are in place.

Defendants contend that HCPC has no standing to bring this action, that the Forest Service has complied with all but one subsection of Section 10 of the HCNRA Act, that HCPC has failed to exhaust administrative remedies, and that HCPC's claims are either moot or barred by latches. In addition, defendants contend that plaintiff is not entitled to the injunctive relief it seeks because such relief would violate the limits of the consent to suit contained in the APA and violate the HCNRA Act by enjoining activities and uses expressly authorized by that Act.

This opinion will not address this latter point as plaintiff does not, at this time, move to enjoin any activities on public or private lands in the HCNRA. Rather, HCPC currently seeks a declaration that the Forest Service has unlawfully withheld or unreasonably delayed the promulgation of regulations pursuant to Section 10 of the HCNRA Act, and seeks a mandatory order compelling the

Forest Service to promulgate new regulations covering that section.

## III. *Initial Issues*

Initially, defendants contest whether HCPC may now, or ever, assert its claims. These arguments raise intimately related issues of jurisdiction, ripeness, finality of the agency action, the requirement of exhaustion, standing, and mootness. The HCNRA Act does not itself provide for judicial review.[3] Instead, plaintiff's asserted right to review is based on general federal question jurisdiction under 28 U.S.C. § 1331, and a portion of the APA (5 U.S.C. § 702) which provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

As part of its jurisdiction under this section, the reviewing court is required to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706.

### A. *The "Finality" or "Exhaustion" Requirement*

■ Normally, a party seeking judicial review under 5 U.S.C. § 702 must (1) identify a "final agency action" to be reviewed; and (2) show that it has suffered a legal wrong or is adversely affected or aggrieved by the agency action being reviewed. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 882–83, 110 S.Ct. 3177, 3185–86, 111 L.Ed.2d 695 (1990) (*"Lujan v. NWF"*). Defendants contend that HCPC cannot meet either of these requirements.

■ The "finality" requirement mandates that a plaintiff identify a "final agency action" and is designed to (1) avoid premature interruption of the administrative process; (2) let the agency develop the necessary fac-

tual background upon which decisions should be based; (3) permit the agency to exercise its discretion or apply its expertise; (4) improve the efficiency of the administrative process; (5) conserve scarce judicial resources, since the plaintiff may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) give the agency a chance to discover and correct its own errors; and (7) avoid the possibility that flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures. *United States Postal Service v. Notestine,* 857 F.2d 989, 993 (5th Cir.1988) (citations omitted).

■ This "finality" requirement is also known as the "exhaustion doctrine" and applies where an action is not ripe for judicial review because no final adverse action has been taken, a full factual record is still being developed, or further agency action could render the challenge moot or result in piecemeal review. *See United States v. Louisiana–Pacific Corp.,* 569 F.Supp. 1141, 1144 (D.Or.1983). To promote the ends which the "finality" or "exhaustion" requirements are designed to meet, a court normally "will not entertain a petition where pending administrative proceedings or further agency action might render the case moot and judicial review completely unnecessary." *Sierra Club v. U.S. Nuclear Regulatory Comm'n,* 825 F.2d 1356, 1360 (9th Cir.1987) (citations omitted).

■ While the Forest Service has issued an "interim rule" which is fully enforceable,[4] it is undisputed that there are no final regulations in place. Rather, it is the Forest Service's "failure to act" or its "unreasonable delay" in acting that is the gravamen of HCPC's complaint. In such cases, the "final-

---

3. Because the HCNRA Act does not itself provide for judicial review, and does not commit review of final actions of the Forest Service to the Court of Appeals, this court need not address the complicated jurisdictional issues raised in such instances. *See Sierra Club v. Thomas,* 828 F.2d 783, 787–97 (D.C.Cir.1987).

4. The Forest Service uses the term "interim rule" to describe its action effective October 5,

1989. 29 C.F.R. Part 292. That action specifically invited public comment which "will be considered in promulgating a final rule." *Id.,* Summary. In other words, the Forest Service expected the "interim rule" to be only temporary until it issued final regulations. Therefore, the "interim rule" cannot be considered final agency action for purposes of complying with Section 10 of the HCNRA.

ity" or "exhaustion" requirements are no barrier to an exercise of jurisdiction.

First, "agency action" is defined as "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act.*" 5 U.S.C. § 551(13) (emphasis added). Second, it is "obvious that the benefits of agency expertise and creation of a record will not be realized if the agency never takes action." *Telecommunications Research & Action Center v. Federal Commun. Comm'n,* 750 F.2d 70, 79 (D.C.Cir.1984) (*"TRAC v. FCC"*). Third, defendant is under a clear statutory duty to issue regulations and to do so in a timely manner. *ONRC v. Lyng, supra,* and 5 U.S.C. § 555(b) (mandating that agencies decide matters in a reasonable time). Fourth, in deciding a claim for unreasonable delay, courts need not consider the merits of the issue (here the content of the final regulations) before the agency. *See TRAC v. FCC, supra* at 79. And finally, Congress' instruction that courts compel agency action that has been "unlawfully withheld or unreasonably delayed" (5 U.S.C. § 706) would be meaningless if the agency could escape review by simply refusing to act.

Thus, I conclude that the issue of whether the issuance of final regulations has been unreasonably delayed is not exempt from review simply because no final regulations yet exist.

## B. *The Standing Requirement*

Next, defendants argue that HCPC has no standing to bring this action because it cannot show that it is "adversely affected or aggrieved" by the agency action (or inaction) being reviewed. The standing inquiry has both statutory and constitutional components. *See Soler v. Scott,* 942 F.2d 597, 605 (9th Cir.1991). The standing requirement "embodies a basic jurisdictional idea born of Article III's 'case or controversy' requirement ... [and asks] 'whether ... the plaintiff has shown injury to himself that is likely to be redressed by a favorable decision.'" *Idaho Conservation League v. Mumma,* 956 F.2d 1508, 1513 (9th Cir.1992) (*citing, Simon*

*v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). One Supreme Court Justice has acknowledged the danger that the standing doctrine might be reduced to a "word game played by secret rules." *Flast v. Cohen,* 392 U.S. 83, 129, 88 S.Ct. 1942, 1967, 20 L.Ed.2d 947 (1968) (Harlan, J., dissenting).

Where a party does not rely on a specific statute authorizing judicial review, the standing analysis focuses on whether the party has a sufficient personal stake in the outcome of an otherwise justiciable controversy to ensure that the dispute sought to be adjudicated will be "presented in an adversary context and in a form historically viewed as capable of judicial resolution." *Sierra Club v. Morton,* 405 U.S. 727, 731, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972); *Flast v. Cohen, supra,* 392 U.S. at 101, 88 S.Ct. at 1953. Where, however, a party relies on a statute authorizing judicial review of the actions of public officials under certain circumstances, the standing analysis first focuses on whether the statute in question authorizes review at the behest of the plaintiff. *Sierra Club v. Morton, supra.*

Where, as here, the plaintiff seeks judicial review under the APA, the statutory element of the standing "word game" is clear: the plaintiff must show that "the injury he complains of (his aggrievement, or the adverse effect upon him) falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis of his complaint." *Lujan v. NWF, supra* 497 U.S. at 883, 110 S.Ct. at 3186. This requirement is met if the plaintiff's interest has a "plausible relationship to the policies" underlying the statute. *Clark v. Securities Indus. Ass'n,* 479 U.S. 388, 403, 107 S.Ct. 750, 759, 93 L.Ed.2d 757 (1987).

Defendants have not addressed the statutory component of the standing inquiry. However, it is clear that HCPC satisfies the statutory standing requirement. In this action, HCPC seeks to compel the issuance of final regulations under Section 10 of the HCNRA Act.[5] The Forest Service is under

---

5. HCPC also alleges that the Forest Service's action in issuing an "interim rule" which was

an obligation to issue final regulations under Section 10 of the HCNRA Act, and is obligated to do so within a reasonable time or face a court order requiring prompt action. *ONRC v. Lyng, supra,* at 1427; *TRAC v. FCC, supra,* at 79; 5 U.S.C. § 706(1). It has been over four years since the Ninth Circuit unequivocally notified the Forest Service that promulgation of regulations was required. *ONRC v. Lyng, supra.* It is undisputed that final regulations are not in place. *See supra,* note 4. Users of the HCNRA are among the intended beneficiaries of the HCNRA Act and the regulations required thereunder. *See* 16 U.S.C. § 460gg(a). Thus, HCPC's interest in having the Forest Service timely promulgate final regulations bears a "plausible relationship" to the policies of both the APA (requiring prompt agency action) and the HCNRA Act (specifying the type of rules and regulations which the Forest Service must promulgate).

■ Defendants nonetheless argue that HCPC lacks standing under Article III of the United States Constitution. For purposes of the Constitution, standing exists when a plaintiff suffers "actual or threatened '[1] personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief.'" *Fernandez v. Brock,* 840 F.2d 622, 625 (9th Cir.1988) (*citing, Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)). Defendants dispute that HCPC satisfies the latter two of these elements.

According to defendants, HCPC complains not about the mere *absence* of final regulations, but about the absence of final regulations *having a specific content.* Defendants assert that the content of the final regulations cannot be prescribed by the court and that there is no assurance that the final regulations will be more protective of the HCNRA than regulations which already govern the use of the HCNRA. For these reasons, defendants argue that HCPC cannot show that its alleged injuries are caused by

the absence of regulations, nor can HCPC show that an order of the court mandating prompt promulgation of the final regulations will redress HCPC's alleged injuries. Defendants are wrong on both counts.

As recognized by the Supreme Court, standing "often turns on the nature and source of the claim asserted." *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). The purpose of the HCNRA Act is "[t]o assure that the natural beauty, and historical and archeological values of [the HCNRA] ... are preserved ... and that the recreational and ecologic values and public enjoyment of the area are thereby enhanced." 16 U.S.C. § 460gg(a). In furtherance of this goal, Congress mandated that the HCNRA be administered in a manner compatible with a number of objectives including (1) protection of the freeflowing rivers of the HCNRA; (2) conservation of scenic, wilderness, cultural, scientific, and other values contributing to the public benefit; (3) preservation of biologically unique features; (4) protection and maintenance of fish and wildlife habitat; (5) protection of archeological and paleontologic sites; (6) preservation and restoration of historic sites; and (7) continuation of existing uses and developments as compatible with the provisions of the HCNRA Act. 16 U.S.C. § 460gg–4. In addition, Congress mandated that the Secretary promulgate rules and regulations which provide: (1) standards for the use and development of privately owned property within the HCNRA; (2) standards and guidelines to insure full protection and preservation of the historic, archeological and paleontological resources of the HCNRA; (3) provisions for the control of the use of motorized and mechanical equipment within the HCNRA; (4) provisions for the control of the use and number of river craft; and (5) standards for the management and use of natural resources on federally owned lands as compatible with the HCNRA Act. 16 U.S.C. § 460gg–7.

The purpose of the HCNRA Act and its Congressional mandates require the Secre-

---

effective upon publication violated the APA's notice and comment requirements under 5 U.S.C. § 553. However, the parties acknowledge that promulgation of final regulations with the requisite notice and comment period would moot this claim. Thus, this opinion focuses on whether the absence of final regulations is sufficient to confer standing on HCPC.

tary to do more than simply maintain the status quo in the HCNRA. In addition, they strongly imply that the users of the public lands in the HCNRA are the intended beneficiaries of the requirements of the HCNRA Act, and that the intended benefit to those users is an enhancement of the "recreational and ecologic values" unique to the HCNRA. Other interests, while being recognized as valid uses, are subordinated to this overriding concern. *See* 16 U.S.C. § 460gg–4(7) and § 460gg–7(e) (timber harvesting, mining, and grazing allowed only as compatible with rest of HCNRA Act).

HCPC has submitted evidence that the purposes of the HCNRA Act are not being carried out, and that this problem would likely be redressed by the issuance of final regulations. The relief sought here (issuance of the final regulations) must seek to obviate the injury (diminution of the ecological and recreational values of the HCNRA) because Congress has said it must.

The cases cited by defendants are distinguishable. In all but one of those cases there was no assurance that the agency action requested would actually inure to the benefit of the plaintiff(s).[6] In each of these cases, non-parties could take action to avoid any beneficial impact of a ruling favoring the plaintiff(s). No such potential exists here.

The remaining case[7] does not involve the potential problem of third party interference, but also is distinguishable. In that case, the plaintiff organization clearly sought not just to compel the promulgation of a rule or regulation, but the promulgation of a rule or regulation having a particular content. A regulation was already in place and an opportunity to comment was given prior to its promulgation. However, the plaintiff organization was dissatisfied with the substance of the regulation and sought the promulgation of another rule which would be more favorable to its interests.

As noted above, the Forest Service is bound by Congressional mandate to issue final regulations which are aimed at enhancing the recreational and ecological values unique to the HCNRA.[8] The Forest Service may have broad latitude to determine exactly how those values are to be protected. Nonetheless, it must promulgate final regulations which protect the very values which HCPC claims are being compromised by the failure to regulate, and it must do so within a reasonable time frame. There are no concerns here that a non-party may choose to ignore or selectively comply with the regulations once they are issued. The final regulations will bind all users of the HCNRA.

Nor, at this juncture, is the substance of the "interim rule" challenged. Plaintiff does

6. *Lujan v. Defenders of Wildlife,* —— U.S. ——, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (requiring Department of Interior to consult with other agencies would not necessarily affect implementation of overseas projects which allegedly were jeopardizing endangered species or their habitats because non-party agencies were not bound by decision and could choose to proceed in spite of ruling favoring plaintiff); *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) (hospitals would not necessarily provide more care to indigent patients even if tax treatment was made less favorable); *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (schools would not necessarily cease racially discriminatory practices even if tax status was changed); *Fernandez v. Brock,* 840 F.2d 622 (9th Cir.1988) (employers need not provide pension plan even if regulations governing pension benefits were promulgated); *Region 8 Forest Service Timber Purchasers Council v. Alcock,* 993 F.2d 800 (11th Cir.1993) (more timber would not necessarily be available to timber purchasers even if actions taken to protect endangered species were eliminated); *Glover*

*River Org. v. U.S. Dept. of Interior,* 675 F.2d 251 (10th Cir.1982) (removal of one species from endangered list would not necessarily mean certain flood control measures would be implemented).

7. *Federal Lands Legal Foundation v. U.S. Forest Service,* 23 Envtl.L.Rep. 20,388, 1992 WL 467947 (D.N.M.1992).

8. All the Forest Service has done to date is adopt an "interim rule." As discussed above, the "interim rule" does not satisfy the Congressional mandate. Defendants argue that the final regulations need not alter the "interim rule" in any significant way. However, there would be no need for final regulations if the "interim rule" was sufficient. Furthermore, the Forest Service has acknowledged that the "interim rule" was intended to be replaced by final regulations. Allowing defendants to avoid an APA timeliness challenge by simply promulgating an "interim rule" would effectively eviscerate the intent of the HCNRA Act. For this reason, the existence of the "interim rule" is analytically unimportant.

not request the adoption of specific regulations, but only the adoption of final regulations that comply with the HCNRA Act. As frequent users and beneficiaries of the of the recreational and ecological resources unique to the HCNRA, members of HCPC have an interest in assuring compliance with the mandates of the HCNRA Act. That interest is likely to be redressed by the issuance of final regulations governing the use and development of the HCNRA. Defendants' standing argument thus fails.

## IV. Merits of Plaintiff's Unreasonable Delay Claim

 Courts consider a number of factors when analyzing claims of agency delay. Those factors include:

(1) the length of time that has elapsed since the agency came under a duty to act and any prospect of early completion;

(2) Congressional intent concerning the speed with which it expects the agency to proceed;

(3) the consequences of the agency's delay and the nature and extent of the interests which are prejudiced by the delay;

(4) the effect of expediting the delayed action on other agency activities of higher or competing priority; and

(5) the agency's justification for the delay.

See, e.g., Sierra Club v. Thomas, 828 F.2d 783, 797 (D.C.Cir.1987); Cutler v. Hayes, 818 F.2d 879, 897–98 (D.C.Cir.1987); TRAC v. FCC, supra, at 79–80.

 The HCNRA Act went into effect on December 31, 1975, nearly eighteen years ago. On July 21, 1989, the Ninth Circuit Court of Appeals decided ONRC v. Lyng, and only a few months later on October 5, 1989, the Forest Service published the "interim rule." The parties vigorously dispute whether the length of the delay in issuing final regulations has been nearly eighteen years (since enactment of the HCNRA Act), or less than five years (since the ONRC v. Lyng decision). Because I find that the delay has been unreasonable under either scenario, I need not settle this dispute.

 Initially, it should be noted that the plaintiff does not allege bad faith on the part of the Forest Service. Counsel for HCPC so indicated at argument on these motions. While a finding of bad faith will usually result in a finding of unreasonable delay, a failure to find bad faith does not immunize an agency from the same kind of claim. Cutler v. Hayes, supra, at 898. The Forest Service's claim that it was unaware that it had a duty to promulgate regulations under Section 10 prior to the decision in ONRC v. Lyng thus does not end the inquiry into whether the delay has been unreasonable.

The HCNRA Act does not provide a timeline for the promulgation of regulations under Section 10. It does require that the CMP be submitted within five years of the effective date of the HCNRA Act, which was done. 16 U.S.C. § 460gg–5. The Forest Service has admitted that no final regulations governing the items specified in Section 10 have been promulgated. Federal Defendants' Response to Plaintiff's Statement of Material Facts, ¶ 1 (admitting Plaintiff's ¶ 2), and note 4, supra. In addition, the Forest Service has admitted that no standards for the use and development of private lands in the HCNRA were included in the "interim rule." Federal Defendants' Response to Plaintiff's Statement of Material Facts, ¶ 3 (admitting Plaintiff's ¶ 4). Actual and potential conflicts exist between competing uses of the HCNRA (Id. at ¶¶ 5, 6 & 7 admitting Plaintiff's ¶¶ 6, 7 & 8). Plaintiff has presented evidence that lack of regulation also has allowed ecological damage to continue, unabated, for years. See Affidavit of Stewart Allen. The Forest Service does not dispute that such conflicts exist and such damage has occurred, but contends that the problems are addressed through its ongoing planning processes or through regulations other than those required under the HCNRA Act. While the lack of regulations has not posed a threat to human health or safety, "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration." Amoco Production Co. v. Village of Gambell, 480 U.S. 531, 545, 107 S.Ct. 1396, 1404, 94 L.Ed.2d 542 (1987).

The Forest Service has shown its ability to take prompt action when necessary. It was able to issue the "interim rule" within three months of the *ONRC v. Lyng* decision and contends that the provisions of the "interim rule" fulfilled all of its obligations under Section 10 other than for regulation of private lands. The Forest Service points to the prompt promulgation of the "interim rule" to emphasize its attempt at complying with the spirit of the HCNRA Act. However, an equally plausible reading of the "interim rule" is that it was enacted, at least in part, to avoid the possibility of court intervention and potential disruption of ongoing land management decisions. *See* 54 Fed.Reg. 41,089 (Oct. 5, 1989) ("interim rule" published to "respond quickly to the court ruling and to continue an undisrupted program of land management"). In spite of its ability to speed up the regulatory process when faced with a Ninth Circuit mandate, the Forest Service nonetheless argues that the subsequent four year delay in promulgating a notice of further proposed rulemaking is justified. I do not agree.

There is no evidence that court action expediting the promulgation of regulations under the HCNRA Act will in any way detrimentally affect other activities of the Forest Service. The affidavit of Edward Cole provides no information regarding any competing priorities for the Forest Service. Nor is there a danger that court intervention would frustrate a statutory goal or cause the Forest Service to lose its ability to effectively regulate at all. *See Cutler v. Hayes, supra,* at 897–98 (D.C.Cir.1987). Rather, court intervention would serve to promote the statutory goals of the HCNRA Act by requiring the Forest Service to promptly promulgate the regulations which are designed to carry out the purposes of the HCNRA Act and will further the ability of the Forest Service to regulate the uses of the HCNRA by providing the necessary regulatory framework under which all users of the HCNRA must operate. While the regulations required are broad in scope and involve many interrelated concerns, they certainly are not beyond the capabilities of the Forest Service to handle within a prompt time frame.

Based on the above, I find that the Forest Service has unreasonably delayed the issuance of final regulations under the HCNRA Act, and conclude that a timeline for publication of proposed rules, notice and comment, and issuance of final regulations is appropriate. In determining what an appropriate schedule is, the court may consider such things as any timetables proposed by the agency (*United Steelworkers of Am. v. Rubber Mfrs. Ass'n,* 783 F.2d 1117, 1119 (D.C.Cir.1986)) and whether the agency has complied with deadlines in the past (*In re Center for Auto Safety,* 793 F.2d 1346 (D.C.Cir.1986)). The Forest Service has proposed deadlines numerous times in the past which have never been met. *See* Footnote 2 of Plaintiff's Memorandum in Support of Summary Judgment, pp. 6–7. Even the estimated dates provided in the recent affidavit of Edward Cole have not been met.

The parties have provided proposed timelines in their supplemental briefs. Having reviewed those schedules, and all other relevant materials, I find that the following schedule is appropriate and may be modified only by court order upon a showing of good cause:

### Private Land Regulations

Notice of Proposed Rulemaking: Publish in Federal Register no later than 14 days from the date of this opinion. Close of comment period: 60 days after publication. Adoption of final regulations: no later than 120 days following close of the comment period.

### Public Land Regulations

Notice of Proposed Rulemaking: Publish in Federal Register no later than 42 days from the date of this opinion. Close of comment period: 60 days after publication. Adoption of final regulations: no later than 120 days following close of the comment period.

Since promulgation of final regulations will render moot the remaining substantive and procedural issues concerning the "interim rule," those issues need not be addressed at this time.

*CONCLUSION*

For the reasons stated above, plaintiff's motion for summary judgment (docket # 49) is GRANTED IN PART AND DENIED IN PART. Defendant–Intervenors Northwest Powerboaters Association and Western Whitewater Association's motion for summary judgment (docket # 44) is DENIED. The Forest Service shall publish, allow comment on, and promulgate final regulations in accordance with the schedule set out above. This court will retain jurisdiction until the foregoing deadlines have been met.

ORDER

In accordance with my Opinion, plaintiff's motion for summary judgment (docket # 49) is GRANTED IN PART AND DENIED IN PART. Defendant–Intervenors Northwest Powerboaters Association and Western Whitewater Association's motion for summary judgment (docket # 44) is DENIED. The Forest Service shall publish, allow comment on, and promulgate final regulations under Section 10 of the Hells Canyon National Recreation Area Act, 16 U.S.C. § 460gg–7 according to the following schedule:

*Private Land Regulations*

Notice of Proposed Rulemaking: Publish in Federal Register no later than 14 days from the date of this order. Close of comment period: 60 days after publication. Adoption of final regulations: no later than 120 days following close of the comment period.

*Public Land Regulations*

Notice of Proposed Rulemaking: Publish in Federal Register no later than 42 days from the date of this order. Close of comment period: 60 days after publication. Adoption of final regulations: no later than 120 days following close of the comment period.

This court will retain jurisdiction until the foregoing deadlines have been met.