**FRIENDS OF THE WILD SWAN, INC.; et al., Plaintiffs,**

v.

**UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture; et al., Defendants.**

Civil No. 94–1455–JO.

United States District Court, D. Oregon.

Nov. 9, 1995.

Gary Keith Kahn, Reeves Kahn & Eder, Portland, OR, Jack R. Tuholske, Missoula, MT, for Plaintiffs.

Kristine Olson, United States Attorney, District of Oregon, Thomas C. Lee, Assistant United States Attorney, United States Attorney's Office, Portland, OR, Sandra B. Zellmer, Stephanie M. Parent, U.S. Department of Justice, Environment and Natural Resources Division, Washington, DC, Scott W. Horngren, Michael E. Haglund, Shay S. Scott, Haglund & Kirtley, Portland, OR, for Defendants and Intervenor–Defendants.

## OPINION AND ORDER

ROBERT E. JONES, District Judge:

This case involves a challenge under the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 *et seq.* (1988), and the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4231 *et seq.* (1988), with regard to the United States Forest Service's ("USFS") management of bull trout native habitat. This dispute is before the Court on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (# 15–1), or alternatively, Defendants' Motion for Judgment on the Pleadings (# 15–2).[1]

## FACTUAL BACKGROUND

The source of this litigation stems from a study entitled "Demographic and Habitat Requirements for Conservation of Bull Trout" which was published in 1993 by the Intermountain Research Station of the USFS. This report stated that bull trout populations are significantly threatened and that conservation of bull trout would require "multiple, high quality connected habitats distributed throughout the conservation area, which in turn should be distributed throughout the species range." To date, the USFS has not definitively responded to these known threats to the existence of bull trout.

Accordingly, Plaintiffs filed this action against the USFS to compel compliance with NFMA and NEPA. Plaintiffs allege that the USFS violated those federal statutes by permitting logging and road construction, among other activities, in the native habitat of the bull trout.[2] In their Amended Complaint, filed January 26, 1995, Plaintiffs assert the following claims for relief:

(1) by failing to protect the future viability of bull trout populations, the USFS violated 16 U.S.C. § 1604(g)(3)(B) of the NFMA which requires forest plans to promote diversity of plant and animal communities;

(2) by allowing the degradation of water conditions, the USFS violated 16 U.S.C. § 1604(g)(3)(E) of the NFMA which requires that management plans provide for the protection of aquatic habitat where timber harvest practices are likely to harm bull trout;

(3) the USFS violated NEPA by failing to consider new information in developing Regional Guides and Forest Plan Environmental Impact Statements ("EIS") for areas where bull trout are present;

(4) the USFS violated the NFMA by failing to amend management plans,

1. "Defendants" refer to the USFS and its regional foresters which include John Lowe, David Jolly, and Dale Bosworth. "Plaintiffs" refer to four environmental groups: Friends of the Wild Swan, Alliance for the Wild Rockies, Swan View Coalition, and Kettle Range Conservation Group.

2. Plaintiffs explain that logging and road construction creates sediment and blocks natural migratory routes which prevents bull trout from spawning. Plaintiffs also cite dams, grazing, and mining as other factors which contribute to the demise of bull trout populations and genetic diversity.

guides, and regulations after discovering new information concerning the status of bull trout populations; and,

(5) the USFS violated 5 U.S.C. § 706(2)(A) of the Administrative Procedure Act ("APA") because its actions and failure to act are arbitrary, capricious, and an abuse of discretion not in accordance with the law.

Am.Compl. ¶¶ 37–50. If they succeed, Plaintiffs request a declaratory judgment holding that the USFS violated NFMA and NEPA. In addition, Plaintiffs seek injunctive relief to prevent the USFS from taking actions which adversely affect the viability of the bull trout, and to require that the USFS prepare a Supplemental EIS for each regional guide and forest plan where bull trout are present. *Id.* at 20–21.

On March 14, 1995, the USFS published a proposal to prepare a strategy for inland native fish habitat management ("INFISH"). 60 *Fed.Reg.* 13697 (March 14, 1995). The proposal states that the USFS, in cooperation with the Bureau of Land Management, will gather information "in order to prepare an Environmental Assessment (EA) for a proposal to protect habitat and populations of native inland fish." *Id.* "[T]his Environmental Assessment is intended to provide the basis for establishing appropriate interim direction to protect habitat and populations of resident native fishes outside of anadromous fish habitat, including bull trout * * *." *Id.* The proposal also serves as notice to any interested party who would like to submit information and comments which the agency will consider in preparing the EA. *Id.*

Though Plaintiffs applaud the USFS's attempts to develop a strategy to protect bull trout, the USFS has not produced a definitive program on behalf of bull trout. Therefore, Plaintiffs argue that the USFS is failing to adequately protect the bull trout populations and their native habitat.

## STANDARD

■ "[W]here a jurisdictional issue is separable from the merits of a case, the court may determine jurisdiction by the standards of a Rule 12(b)(1) motion to dismiss for lack of jurisdiction. In such a situation, the district court is: 'free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary.'" *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987) (quoting *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983) (internal quotation omitted)).

■ "Because the court's power to hear the case is at stake, it is not limited to considering the allegations of the complaint. It may consider *extrinsic evidence;* and if the evidence is disputed, it may weigh the evidence and *determine* the facts in order to satisfy itself as to its power to hear the case * * *." Schwarzer, Tashima, Wagstaffe, *Federal Civil Procedure Before Trial,* RUTTER GROUP PRACTICE GUIDE § 9:85 (1992) (emphasis in original) (citing *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987); *MCG, Inc. v. Great Western Energy Corp.,* 896 F.2d 170, 176 (5th Cir.1990)). However, where the question of jurisdiction is dependent on the resolution of factual issues going to the merits, a court may not resolve genuinely disputed facts. *Augustine* at 1077; *See* Schwarzer § 9:85.1.

## DISCUSSION

### I. Statutory Framework

The NFMA directs the Secretary to "develop, maintain, and, as appropriate, revise land and resource management plans [LRMP] for units of the National Forest System." 16 U.S.C. § 1604(a) (1988). Furthermore, the Secretary shall promulgate regulations which specify guidelines for LRMPs which "provide for diversity of plant and animal communities based on the suitability and capability of the specific land area in order to meet overall multiple use objectives * * *." *Id.* § 1604(g)(3)(B).

The implementing regulations for LRMPs require that "[f]ish and wildlife habitat shall be managed to maintain viable populations of existing native and desired non-native vertebrate species in the planning area." 36 C.F.R. § 219.19 (1994).[3] In addition,

---

**3.** There are at least three major components to 36 C.F.R. § 219.19:

First, the regulation establishes as its purpose management of the forest to maintain a "viable population" of existing species. *Id.* Second,

LRMPs "shall provide for multiple use and sustained yield of goods and services from the National Forest System in a way that maximizes long term net public benefits in an environmentally sound manner." *Id.* § 219.1. More specifically, the Secretary shall develop LRMPs which insure that timber will be harvested only where (1) the harvest will not irreparably damage the land or water, (2) the land will be adequately restocked within five years, (3) water bodies are protected, and (4) economic output is not the primary goal. 16 U.S.C. § 1604(g)(3)(E). In accordance with the statute and regulations, the LRMP establishes general guidelines and a statement of intent which is used by the USFS in site-specific decisions for up to fifteen years. *Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1511 (9th Cir. 1992) (citing 16 U.S.C. § 1604(a)).

The LRMP also must be developed in compliance with NEPA which requires federal agencies to prepare an EIS before undertaking "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C)(i). The draft and final EIS must accompany the LRMP. 36 C.F.R. § 219.10 (1994).[4]

## II. Arguments

### A. Defendants' Position

In support of its Motion to Dismiss, Defendants contend that this Court is without jurisdiction to review the LRMPs targeted by Plaintiffs' Amended Complaint because (1) the decision to amend LRMPs rests solely within the discretion of the USFS, (2) Plaintiffs have failed to exhaust administrative remedies, (3) Plaintiffs do not challenge a final agency action, and (4) the issue is not ripe for resolution.

> the Forest Service must select "indicator species" for the purpose of evaluating wildlife decisions. *Id.* § 219.19(a)(1)–(6). For these species, forest plans "shall establish objectives for the maintenance and improvement of habitat * * * to the degree consistent with overall multiple use objectives * * *. *Id.* § 219.19(a). * * * * A third part of this regulation requires the Forest Service to identify habitats critical to threatened or endangered species and prescribe measures to prevent their adverse modification. *Id.* § 219.19(a)(7).
> *Seattle Audubon Society v. Evans*, 952 F.2d 297, 300 (9th Cir.1991).

### B. Plaintiffs' Position

In opposition, Plaintiffs argue that new information known by the USFS shows that the LRMPs for the bull trout habitat do not adequately protect bull trout populations. In light of this new information about bull trout, the USFS's decisions to allow degrading activities (*e.g.* logging and road construction) and the USFS's failure to amend its LRMPs contravene its duties under the NFMA. Though Plaintiffs acknowledge the USFS's attempt to gain knowledge about protecting bull trout through INFISH, they argue that the USFS is currently failing to comply with its duties under the NFMA. Therefore, the USFS should consider the new information regarding the viability of bull trout, and then amend the LRMPs to maintain viable populations.

## III. Analysis

As a matter of introduction, I wish to properly categorize this lawsuit. This is not an action for judicial review of an LRMP, but rather is a lawsuit under the APA, NFMA, and NEPA to compel the USFS to perform statutorily mandated duties. The APA provides for judicial intervention to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).[5]

Plaintiffs challenge the USFS's alleged failure to ensure the viability of bull trout. The USFS responds by attacking the sufficiency of the pleadings under four interrelated doctrines: (1) primary jurisdiction, (2) exhaustion, (3) finality, and (4) ripeness. I address each in turn.

**4.** "To satisfy NEPA, plan drafters must formulate and evaluate a broad range of alternative management scenarios with the goal of 'identifying the alternative that comes nearest to maximizing net public benefits.'" *Sierra Club v. Robertson*, 28 F.3d 753, 755 (8th Cir.1994) (quoting 36 C.F.R. § 219.12(f)).

**5.** There are two exceptions from this grant of authority: (1) where the statute precludes judicial review, or (2) where agency action is committed to its discretion by law. *Id.* § 701(a). However, neither of these exceptions apply to this lawsuit.

## A. Doctrine of Primary Jurisdiction

■ The doctrine of primary jurisdiction "requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper*, 507 U.S. 258, ——, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993). "Referral of the issue to the administrative agency does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." *Id.* Four factors are considered when determining whether to invoke the doctrine: " '(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration.' " *Cal–Almond, Inc. v. Department of Agriculture*, 67 F.3d 874 (9th Cir.1995) (quoting *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir.1987)).

■ Applying these factors to the present action, I find that whether the USFS is, or is not, complying with its statutory mandate within a reasonable time period is a question for the court which will be determined based upon a legal interpretation of NFMA and a factual examination of the USFS's actions. Therefore, "referral" to the agency of the issue of reasonable compliance with NFMA is not necessary. Ninth Circuit precedent supports this approach.

For instance, in *Seattle Audubon Soc'y v. Evans*, 952 F.2d 297 (9th Cir.1991), environmental groups sued the USFS for failing to adopt an LRMP which addressed the future survival of spotted owls. *Id.* at 298. The Ninth Circuit affirmed the district court's conclusion that "the Forest Service had violated the NFMA by failing to have a plan in place to ensure the viability of all native vertebrate species, including the northern spotted owl." *Id.* at 301–302. In so holding, the Ninth Circuit confirmed that the USFS has an affirmative duty under the NFMA to develop LRMPs which ensure the viability of all native animal species, including listed species under the ESA.

■ Accordingly, this Court may determine whether the USFS is reasonably complying with its statutory mandate,[6] provided that the principles of justiciability (*e.g.*, exhaustion, finality, ripeness) are satisfied. These principles are discussed below.

## B. Exhaustion of Administrative Remedies

■ The doctrine of exhaustion of administrative remedies provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969) (internal quotation omitted). "The exhaustion doctrine guarantees administrative autonomy and efficiency, and ensures that administrative agencies are afforded an opportunity to address their own errors without judicial intervention." *Sharps v. United States Forest Service*, 28 F.3d 851, 854 (8th Cir.1994). In addition, "the exhaustion doctrine continues to exist under the APA to the extent that it is required by statute or by agency rule as a prerequisite to judicial review." *Darby v. Cisneros*, 509 U.S. 137, ——, 113 S.Ct. 2539, 2548, 125 L.Ed.2d 113 (1993).

■ The USFS's regulations implementing the NFMA require litigants who wish to challenge an LRMP to file a notice of appeal within ninety days of the notice of decision. 36 C.F.R. § 217.8(a)(3).[7] Though the briefs do not specify the issuance dates of the LRMPs which are challenged in this action, it appears undisputed that Plaintiffs did not administratively appeal the LRMPs

---

6. Admittedly, however, the remedies available to the court are somewhat limited because the court cannot dictate how the USFS should perform actions which are peculiarly within the USFS's expertise, such as drafting LRMPs. The remedies available to the court are discussed further below.

7. Section 251.101 adds:
   [i]t is the position of the Department of Agriculture that any filing for Federal judicial review of and relief from a decision appealable under this subpart is premature and inappropriate, unless the appellant has first sought to resolve the dispute by invoking and exhausting the procedures of this subpart.

at any time.[8] Instead, Plaintiffs filed this suit in federal court shortly after the USFS discovered new information about the viability of bull trout populations. Consequently, they do not challenge the reasoning underlying the LRMPs, but rather they seek to compel the USFS to comply with the NFMA (*i.e.,* protect the viability of bull trout). There is no statutory or administrative procedure for this type of challenge. "[A]n appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Darby v. Cisneros,* 509 U.S. 137, ——, 113 S.Ct. 2539, 2548, 125 L.Ed.2d 113 (1993). Therefore, Plaintiffs are not required to exhaust administrative remedies before filing this lawsuit in district court.

## C. Finality

Under the APA, "[a] person suffering legal wrong because of agency action * * * is entitled to judicial review thereof." 5 U.S.C. § 702. Reviewable "agency action" includes a "failure to act." *Id.* § 551(13). Furthermore, where review is sought under the general review provisions of the APA, rather than pursuant to specific authorizations in the underlying statute, the "agency action" must be a "final agency action for which there is no adequate remedy in a court * * *." *Lujan v. National Wildlife Fed'n,*

497 U.S. 871, 882, 110 S.Ct. 3177, 3185, 111 L.Ed.2d 695 (1990) (citing 5 U.S.C. § 704).

" 'At some point administrative delay amounts to a refusal to act, with sufficient finality and ripeness to permit judicial review.' " *Public Citizen Health Research v. Com'r, Food & Drug,* 740 F.2d 21, 32 (D.C.Cir1984) (quoting *Environmental Defense Fund, Inc. v. Hardin,* 428 F.2d 1093, 1100 (D.C.Cir.1970)); *see also Hells Canyon Preservation Council v. Richmond,* 841 F.Supp. 1039, 1044–45 (D.Or.1993) ("it is the Forest Service's 'failure to act' or its 'unreasonable delay' in acting that is the gravamen of [plaintiffs'] complaint. In such cases, the 'finality' or 'exhaustion' requirements are no barrier to an exercise of jurisdiction.") For example,

> When agency recalcitrance is in the face of a clear statutory duty or is of such a magnitude that it amounts to an abdication of statutory responsibility, the court has the power to order the agency to act to carry out its substantive statutory mandates. [citations omitted]. And even when agency delay or recalcitrance does not rise to a level that justifies either of the above courses, APA empowers the court to evaluate the pace of the agency decisional process and to order expedition if the pace lags unreasonably.

*Public Citizen,* 740 F.2d at 32.[9] Accordingly, in *Public Citizen,* the D.C.Circuit instructed:

**8.** In their Supplemental Reply Memorandum, Plaintiffs argue that the administrative review procedures which cover challenges to forest plans at the time they are adopted do not apply to this case because Plaintiffs are trying to prevent the Forest Service from violating an existing Plan. However, contrary to Plaintiffs' assertions, they are challenging the adequacy of the LRMPs, rather than the Forest Service's compliance with the LRMPs. Consequently, Plaintiffs' claim that the LRMPs are arbitrary and capricious should have been brought within 90 days of the adoption of the LRMPs. *See* 36 C.F.R. § 217.8(a)(3).

**9.** In *Public Citizen,* a citizen group petitioned the Food and Drug Administration (FDA) to promulgate a regulation that required labels for aspirin which warn against the risk of Reye's Syndrome. After the FDA refused to fulfill the petition, the citizen groups filed suit in federal district court seeking an order compelling the FDA to require appropriate warning labels on aspirin products.

On the FDA's motion for summary judgment, the district court dismissed the action for lack of

finality and ripeness. After setting forth the principles underlying the requirements of finality and ripeness, the D.C.Circuit concluded that "[t]he current record strongly suggests that the pace of agency decisionmaking is unreasonably dilatory [because] [a]ll scientific evidence in the record points to a link between salicylates and Reye's Syndrome * * *." 740 F.2d at 34. Therefore, the D.C. Circuit remanded the case "to permit the District Court to take evidence and rule initially on whether the agency response to [plaintiffs'] petition for a warning label on aspirin products has been 'unreasonably delayed.' " *Id.* at 35. Furthermore, if the district court finds "unreasonable delay, it must fashion an appropriate remedy, which may include ordering rulemaking to begin immediately and proceed expeditiously, and ordering periodic reports to the court concerning the pace of the rulemaking." *Id.*

I find the reasoning and instruction in *Public Citizen* to be very persuasive to the present action. Moreover, the fact that the plaintiffs in *Public Citizen* exhausted their administrative

"In deciding whether the pace of decision is unreasonably delayed, the court should consider the nature and extent of the interests prejudiced by delay, the agency justification for the pace of decision, and the context of the statutory scheme out of which the dispute arises." *Id.* at 35.

Though it does not appear that the USFS has totally abrogated its responsibilities under NFMA, there is evidence that the USFS may be unreasonably delaying affirmative action in favor of protecting bull trout which the USFS has known since 1993 are significantly threatened throughout their range by activities on federal forest lands. Therefore, if the case is ripe, this court will retain jurisdiction to determine whether the USFS is unreasonably failing to implement adequate protections for the viability of rapidly declining populations of bull trout.

### D. Ripeness

"The ripeness doctrine serves 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' " *Winter v. California Medical Review, Inc.,* 900 F.2d 1322, 1325 (9th Cir.1990) (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)).

A court determines whether a claim is ripe for review by examining the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. *Winter* at 1325. "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Id.* (internal quotation omitted). "In interpreting the finality requirement, a court looks to whether the agency action represents the final administrative word to insure that judicial review will not interfere with the agency's decision-making process." *Id.* (internal quotation omitted). "To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss." *Id.* (internal quotation omitted).

Applying these principles to the present action, I find that Plaintiffs' claim of unreasonable delay is ripe for review because the USFS has not definitively responded to information received in 1993 concerning the threatened status of the bull trout even though the viability of the entire species is at stake. However, this Court will not entangle itself in premature review of either the USFS's proposed plans under NFMA which respond to the threat to bull trout populations, or whether the USFS is required under NEPA to supplement existing EISs.[10]

Ripeness and finality considerations compel this result because the USFS is in the process, albeit somewhat slow, of developing plans which address the viability of bull trout and other native fish. Therefore, Plaintiffs cannot identify a final agency action which is

remedies by petitioning the FDA to act, does not detract from *Public Citizen*'s applicability to this case because there are no established administrative remedies to be exhausted in this action against the USFS.

10. Plaintiffs correctly state that regulations require agencies to supplement existing EISs where either:

   (i) The agency makes substantial changes in the proposed action that are relevant to environmental concerns; or

   (ii) There are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impact.

40 C.F.R. 1502.9(c)(1) (1995). Courts review an agency decision regarding the need for a supplemental EIS under the deferential "arbitrary and capricious" standard of § 706(2)(A) of the APA because the decision to prepare a supplemental EIS is highly factual. *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 374, 377, 109 S.Ct. 1851, 1861, 104 L.Ed.2d 377 (1989).

However, in the present action, the USFS is currently developing an Environmental Assessment with regard to the viability of inland native fishes which includes the bull trout. Because the USFS is involved in an on-going information gathering and assessment process, it has not necessarily refused to provide a new or supplemental EIS. Consequently, there is no final agency action by the USFS with regard to whether it will, or will not, prepare a new or supplemental EIS addressing the new information on the viability of bull trout.

ripe for review with regard to whether the USFS must amend the LRMPs under NFMA or provide a supplemental EIS under NEPA.

As a result, my role will encompass determining only whether the USFS's pace in developing a strategy to provide for the viability of bull trout is unreasonably lagging. Accordingly, Plaintiffs' Third and Fourth Claims are DISMISSED for lack of ripeness and finality.

## CONCLUSION

IT IS ORDERED that Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (#15–1) and Motion for Judgment on the Pleadings (#15–2) are GRANTED IN PART and DENIED IN PART, and Plaintiffs' Third and Fourth Claims are DISMISSED without prejudice.

IT IS FURTHER ORDERED that a status conference is set for December 18, 1995, and on or before December 15, 1995, the USFS is ordered to submit to the Court in writing its current progress towards gathering information and developing protections for the bull trout.

The parties are reminded that this decision is within the context of a motion to dismiss where the merits of Plaintiffs' case are not under full examination. If at any time this Court lacks subject matter jurisdiction as a result of the USFS's efforts regarding inland native fishes, this lawsuit will be dismissed. In the meantime, this Court retains jurisdiction to determine whether the USFS is discharging its duties under the NFMA within a reasonable time.