CAL–ALMOND, INC., a California corporation; Saulsbury Orchard and Almond Processing Inc.; Carlson Farms, a sole proprietorship, Plaintiffs–Appellees,

v.

DEPARTMENT OF AGRICULTURE, Defendant–Appellant.

Nos. 94–17160, 94–17163, 94–17164, 94–17166, 94–17167 and 94–17182.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 11, 1995.

Decided Oct. 10, 1995.

Jeffrica Jenkins Lee, United States Department of Justice, Washington, DC, for defendant-appellant.

Brian C. Leighton, Clovis, California, for plaintiffs-appellees.

Before: CHOY, SCHROEDER, and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

In a previous appeal for these cases, we held that certain provisions of the California Almond Marketing Order (Order), 7 C.F.R. § 981, violated the free speech and free association rights of several almond handlers. *Cal–Almond, Inc. v. Department of Agriculture,* 14 F.3d 429 (9th Cir.1993) (*Cal–Almond I* ). We remanded the case to the district court to conduct the fact-intensive inquiry necessary to determine the appropriate remedy. On remand, the district court ordered the United States Department of Agriculture (USDA) to refund the full amount the almond handlers had paid to the Board since 1980, to release all of the advertising assessments that had been placed in escrow accounts, and to reimburse the almond handlers all of the money they spent on creditable advertising. The USDA appeals the propriety of the district court's award. We have jurisdiction, *see* 28 U.S.C. § 1291, and we affirm in part and reverse in part.

## I.

In our previous opinion, we held that certain provisions of the Order, which was issued by the Secretary of Agriculture pursuant to the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. § 601–674 (AMAA), to regulate the California almond-handling industry, violated the almond handlers' free speech and free association rights. *Id.* at 440. Specifically, we examined the Order's provisions that required almond handlers to contribute to a generic pro-almond public relations, advertising, and promotion program (Program). The Program, administered by the California Almond Board (Board), was funded by assessments collected from almond handlers on the basis of the volume of almonds handled. 7 C.F.R. §§ 981.41(a), 981.81(a). The assessments could be reduced, at least in part, by the amount a handler spent on creditable advertising and other promotional activities as provided in 7 C.F.R. § 981.441(d)(1)(i)–(iii). In order to be approved by the Board, the promotional activity had to have as its "clear and evident purpose" the promotion of "the sale, consumption, or use of California almonds." 7 C.F.R. § 981.441(e)(2).

In *Cal–Almond I,* we held that the Board's assessments implicated the almond handlers' First Amendment rights because the handlers, who constitute a "publicly identified group," were forced to fund the " 'dissemination of a particular message associated with that group.' " *Cal–Almond I,* 14 F.3d at 435 (quoting *United States v. Frame,* 885 F.2d 1119, 1132 (3rd Cir.1989), *cert. denied,* 493 U.S. 1094, 110 S.Ct. 1168, 107 L.Ed.2d 1070 (1990)). We found that the assessments implicated the handlers' rights to free speech and free association, regardless of whether the assessments were paid directly to the Board or satisfied by expenditures on creditable advertising and promotional activities. *Id.* Applying the three prong test from *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), we concluded that the Almond Marketing Program violated the handlers' First Amendment rights. *Cal–Almond I,* 14 F.3d at 440. Consequently, we remanded to the district court the fact-intensive determination of the appropriate remedy. *Id.* at 449.

On remand, the parties stipulated regarding the various amounts that each handler paid to the Board for creditable advertising, that had been placed in escrow for payment of creditable advertising assessments, that had been paid to third parties (*i.e.,* newspapers, magazines, etc.) for creditable advertising, and the portion of each handler's annual assessments that was applied toward the Board's generic promotional activities. The district court ordered the USDA to refund approximately $135,000, which represents the full amount handlers paid to the Board since 1980, to release approximately $1.7 million of advertising assessments that had been placed in escrow accounts, and to reimburse the $2.5 million that they had paid third parties for creditable advertising. The USDA timely appeals this order.

## II.

■ We first address whether the doctrine of sovereign immunity bars the reimbursement of money the handlers spent on creditable advertising ordered by the district

court.[1] We review questions involving principles of sovereign immunity de novo. *United States v. Woodley*, 9 F.3d 774, 781 (9th Cir.1993).

■ It is well established that "[i]n a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity...." *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976). It is also clear that waivers of sovereign immunity must be "unequivocally expressed." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992). Claims for specific relief, however, are not subject to sovereign immunity. *Navel Orange Admin. Comm. v. Exeter Orange Co.*, 722 F.2d 449, 452 (9th Cir.1983). The question we must decide, therefore, is whether reimbursement of the money that the handlers paid for creditable advertising is best characterized as damages, and thus barred by the doctrine of sovereign immunity, or as specific relief.

The distinction between money damages and specific monetary relief is that "[d]amages are given to the plaintiff to *substitute* for a suffered loss.... specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he is entitled.'" *Maryland Dep't of Human Resources v. Department of HHS*, 763 F.2d 1441, 1446 (D.C.Cir.1985) (quoting D. Dobbs, Handbook on the Law of Remedies 135 (1973)); *see also Bowen v. Massachusetts*, 487 U.S. 879, 914, 108 S.Ct. 2722, 2742, 101 L.Ed.2d 749 (Scalia, J., dissenting) ("Whereas damages compensate a plaintiff for a loss, specific relief prevents or undoes the loss—for example, by ordering return to the plaintiff of the precise property that has been wrongfully taken....").

■ Requiring the USDA to reimburse the handlers for money they expended on creditable advertising would oblige the USDA to "substitute" money from its coffers for money the handlers had paid to third parties. Unlike the assessments paid directly to the Board, in the situation of the money paid for creditable advertising, the USDA cannot return the "precise property wrongfully taken" because that money was not paid to the USDA. Reimbursement for the money handlers spent on creditable advertising would therefore constitute damages. Since nothing in the Act demonstrates congressional intent to waive sovereign immunity for the claims raised by the handlers, *see Wileman*, 58 F.3d at 1385, the handlers' claims for reimbursement for money spent on creditable advertising are barred by sovereign immunity.

The handlers cite several cases in which monetary remediation was not barred by sovereign immunity, arguing that those cases compel the conclusion that reimbursement in this case would not constitute damages. *See, e.g., Bowen v. Massachusetts*, 487 U.S. 879, 910, 108 S.Ct. 2722, 2740, 101 L.Ed.2d 749 (1988); *Katz v. Cisneros*, 16 F.3d 1204, 1208 (Fed.Cir.1994); *Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 797 (Fed.Cir.1993); *Zellous v. Broadhead Assoc.*, 906 F.2d 94 (3d Cir.1990). In those cases, however, the monetary awards were made to plaintiffs because they were statutorily entitled to amounts that had been wrongfully withheld, not to reimburse them for money spent. For example, in *Zellous*—the case primarily relied upon by the handlers and the district court—plaintiffs were tenants of a housing project whose rent was subsidized under federal law. *Zellous*, 906 F.2d at 95. The tenants claimed that the Department of Housing and Urban Development (HUD), together with the housing project's owners and managers, violated the Housing Act and associated federal regulations as well as the Administrative Procedure Act (APA) by failing to make timely adjustments in their utilities allowance. *Id.* As a consequence of these violations, the tenants did not receive from HUD money to which they were entitled under the Housing Act and they paid more in rent than they should have. *Id.*

At first glance, *Zellous* and the other cases on which the handlers rely, appear to resemble the situation in this case. Like this case,

---

1. The USDA does not, and indeed could not, contend that refund of assessments paid to the Board would be damages and therefore barred by sovereign immunity. *See Wileman Bros. & Elliott, Inc. v. Espy*, 58 F.3d 1367, 1386 (9th Cir.1995).

plaintiffs in *Zellous* paid money to third parties (*i.e.*, private landlords). However, the plaintiffs in *Zellous* were not compensated for the money they were wrongfully forced to pay in excess rent. Instead, the court in *Zellous* " 'merely require[d] [HUD] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it [implemented timely utility allowance adjustments.]' " *Id.* at 99 (second and third alterations in original) (internal quotation marks omitted).

It is true the amount the *Zellous* plaintiffs paid to the landlords was equal to the amount wrongfully withheld, but that fact does not blur the distinction between the different theories of recovery. Had the plaintiffs in *Zellous* framed their request for relief as seeking recovery of money wrongfully paid, their recovery would have been barred by sovereign immunity. They avoided this problem by instead framing their claim as one seeking to have the government pay them money to which they were statutorily entitled. The coincidence that the two amounts (the amount of excess rent paid and the amount owed to plaintiffs by HUD) were the same does not change the fact that the *Zellous* plaintiffs had a separate remedial theory that did not seek compensation for money they paid in excess rent. The availability of an alternative remedial theory allowed them to avoid the roadblock that sovereign immunity otherwise would have presented. By contrast, no alternative theory exists in this case to entitle the handlers to recover moneys spent on creditable advertising.

■ The almond handlers also argue that the doctrine of the law of the case precludes us from addressing the appropriateness of the district court's order requiring reimbursement of money spent on creditable advertising. The law of the case doctrine requires that a decision rendered by an appellate court on a legal issue be followed in all subsequent proceedings in the same case. *Waggoner v. Dallaire,* 767 F.2d 589, 593 (9th Cir.1985), *cert. denied* 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 601 (1986). The almond handlers urge that we implicitly contemplated the reimbursement of the $2.5 mil-

lion spent on creditable advertising in our decision in *Cal–Almond I,* and are therefore precluded from reconsidering it. To buttress their argument, the almond handlers point out that in *Cal–Almond I,* we found that the Order was unconstitutional regardless of whether the handlers made direct payment to the Board or expended money on preapproved advertising. This argument confuses the distinction between right and remedy.

■ In *Cal–Almond I,* we defined the First Amendment rights infringed by the Program. For the purpose of that analysis, it did not matter to whom the money was paid; it only mattered that the payments were coercive and required the handlers to fund dissemination of a particular message. However, when analyzing what remedies are available, it matters a great deal whether the recovery would require the USDA to reimburse the handlers for money they paid to third parties because of the doctrine of sovereign immunity.

■ Our analysis regarding sovereign immunity leads us to a somewhat awkward result: although the handlers' compelled expenditures on creditable advertising violated their First Amendment rights, there is no individual remediation available for those violations. Despite the celebrated dictum in *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803), in the law of modern constitutional remedies, not every right comes equipped with a guarantee of individual remediation for every violation of that right. As this case demonstrates, the doctrine of sovereign immunity provides a formidable limitation on the availability of individual remedies. While it is "[d]ecried as irrational and immoral by some, ... criticized on historic grounds by others, ... recognized by all to have little doctrinal coherence, the doctrine of sovereign immunity nonetheless retained the endorsement of the two institutions that matter—the Supreme Court and Congress." *Interfirst Bank of Dallas, N.A. v. United States,* 769 F.2d 299, 303 (5th Cir.1985), *cert. denied,* 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986). Under the doctrine of sovereign immunity, we are compelled to conclude that the handlers'

claims for reimbursement of the amounts they were wrongfully compelled to pay for creditable advertising is a right for which there is no individual remedy.

### III.

We now turn to the USDA's argument that any refund to the almond handlers must be offset or reduced by the amount of benefit the handlers received from the Board's activities.

■ As a primary matter, the almond handlers assert that the USDA either waived, or should be estopped from asserting, its claim for offset of the refund. The almond handlers argue that the USDA waived its argument regarding offset because it did not raise the issue until we remanded the case for determination of the remedies. However, it was not until our remand that the specifics of fashioning remedial relief came into focus. The USDA did not waive its opportunity to raise the issue of offset by letting the determination of remedies occur without it. For this reason, the cases relied on by the handlers are distinguishable. In both *Laffey v. Northwest Airlines, Inc.,* 740 F.2d 1071, 1089 (D.C.Cir.1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985), and *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,* 810 F.2d 243, 250–51 (D.C.Cir. 1987), defendants failed to raise objections to courts' remedial determinations at the time those determinations were being made. In this case, the USDA did not waive its opportunity to raise the issue of offset.

■ Nor is it precluded by the doctrine of judicial estoppel. Judicial estoppel " 'is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process.' " *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1989) (quoting *Religious Technology Ctr. v. Scott,* 869 F.2d 1306, 1311 (9th Cir.1989) (Hall, J., dissenting)), *cert. denied,* 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991).

■ The almond handlers contend that the USDA previously conceded that the handlers would be entitled to receive a full re-fund if the assessments were found to have been wrongfully imposed. In support, the handlers refer us to the USDA brief for *Cal–Almond I,* in which the USDA stated, "[T]he AMAA, through its provisions for judicial review, provides handlers with an opportunity to recoup assessments found to have been wrongfully imposed." The almond handlers also cite the USDA's cross-motion for summary judgment in the original proceeding before the district court, in which the USDA stated, "The AMAA ... provides handlers with an opportunity to recoup assessments found to have been wrongfully imposed." The handlers overstate the USDA's concessions. These statements merely indicate that the USDA acknowledges that a refund is available for wrongfully imposed assessments, not an admission that the handlers are entitled to a full refund. The USDA cannot be judicially estopped from arguing against a full refund.

■ The handlers' primary contention is that the law of the case precludes us from reviewing the question of whether the handlers' refund from the Board should be reduced. Whether an appellate court previously decided an issue of law, precluding the district court from reconsidering the same issue, is a mixed question of fact and law in which legal questions predominate. *Cf. United States v. Geophysical Corp.,* 732 F.2d 693, 697 (9th Cir.1984). A mixed question of law and fact in which legal issues predominate is reviewed de novo. *United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir. (en banc)), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ The USDA contends that the law of the case doctrine does not preclude consideration of this issue because *Cal–Almond I* acknowledged that plaintiffs received some benefit from the unconstitutionally compelled advertising. Our prior acknowledgment that the handlers received some benefit from the coerced advertising, the USDA contends, implies that we did not intend for the handlers to be refunded all of the money they paid to the Board. This time it is the USDA who confuses right and remedy.

In applying the *Central Hudson* balancing test to determine whether the almond handlers' First Amendment right was violated, we weighed the benefit handlers derived from the coercive advertising. *Cal–Almond I*, 14 F.3d at 437–38. Once we applied the balancing test and determined that the assessments failed the balancing, however, we concluded that the *entire* amount of assessments spent in advertising were unconstitutional, not merely the portion that failed to advance the handlers' efforts to sell their almonds. *Id.* at 438. In other words, our consideration of the benefit to the handlers was for the purposes of analyzing the right, not the remedy.

In *Cal–Almond I*, we decided that "a sufficient remedy for handlers who prevail in their administrative petitions is a refund of any assessments found not to have been due." *Id.* at 448. Our decision was simply an application of existing law. "[T]his court, on several occasions, has suggested that a refund of improper assessments is the appropriate remedy for prevailing handlers." *Wileman*, 58 F.3d at 1385 (citing *Cal–Almond I*, 14 F.3d at 448; *Riverbend Farms*, 847 F.2d at 559; *Navel Orange Admin. Comm.*, 722 F.2d at 452).

Despite the well established law in this area, and our reliance on it in *Cal–Almond I*, the USDA attempts to have us consider the benefit to the handlers with respect to remedies by proffering a very novel argument. The USDA contends that unless we discount the handlers' refund by the amount by which they benefitted by the Board's unconstitutional conduct, they will be unjustly enriched. However, the USDA cannot point to, nor can we find, any case in which the theory of unjust enrichment has been relied upon in fashioning a constitutional remedy. The fact that the assessments may have conferred some benefit on the handlers does not change the fact that the *entire* amount of the assessments used for advertising was improper and, as we held in *Cal–Almond I*, that the handlers are entitled to refund of *any* improper assessments.

**IV.**

The USDA's final argument is that the district court erred by refusing to remand to the Secretary for creation of a supplemental administrative record. The USDA asserts that a remand is required by the AMAA, or in the alternative, by the doctrine of primary jurisdiction.

■ We review the district court's interpretation of the AMAA de novo. *See Cf. Abedini v. INS*, 971 F.2d 188, 190–91 (9th Cir.1992) (reviewing de novo the determination of purely legal questions regarding statutory requirements).

"Congress has provided a special procedure for ascertaining whether [a marketing] order is or is not in accordance with the law." *United States v. Ruzicka*, 329 U.S. 287, 294, 67 S.Ct. 207, 210, 91 L.Ed. 290 (1946). The AMAA gives handlers of agricultural commodities the express right to seek administrative review of "any [marketing] order or a provision of such order or any obligation imposed in connection therewith." 7 U.S.C. § 608c(15)(A). A handler contending that such a provision is "not in accordance with law" is entitled to a hearing on that question before the agency and a ruling by the Secretary, *id.*, and the remedy must be sought from the Secretary in the first instance. *Ruzicka*, 329 U.S. at 294, 67 S.Ct. at 210. The Secretary's final ruling is then reviewable by a district court. 7 U.S.C. § 608c(15)(B). "If the court determines that [a] ruling [by the Secretary] is not in accordance with law, it shall remand such proceedings to the Secretary with directions either (1) to make such ruling as the court shall determine to be in accordance with law, or (2) to take such further proceedings as, in its opinion, the law requires." *Id.*

■ This scheme has been complied with in this case. The handlers filed administrative petitions pursuant to 7 U.S.C. § 608c(15)(A). *Cal–Almond I*, 14 F.3d at 434. Following hearings, USDA administrative law judges issued decisions, which were appealed to USDA Judicial Officers. After the Judicial Officers rendered their decisions, the handlers brought their claims to the district court. This is all the Act requires.

■ The USDA nevertheless contends that the district court erred by refusing to remand to the Secretary for creation of a supplemental administrative record. There

is no reason to remand to the USDA for determination of the scope of the remedy. To the contrary, we have held on numerous occasions, including the prior appeal in this case, that an appropriate remedy for handlers who prevail in their administrative petitions is a refund of assessments wrongfully paid. *See Cal–Almond I*, 14 F.3d at 448; *United States v. Riverbend Farms*, 847 F.2d 553, 559 (9th Cir.1988) ("If the Secretary or courts (upon proper appeal) substantiated the challenge, the handler would be entitled to a refund."). The parties here stipulated regarding all relevant amounts. Since a determination of the remedy flows directly from our decision in *Cal–Almond I* and the parties' stipulation, there is no need to remand to the Secretary. The district court did not err by declining to remand the issue of remedies to the Secretary.

In the alternative, the USDA argues that the doctrine of primary jurisdiction requires a remand. The doctrine of primary jurisdiction allows courts to exercise their discretion to route certain issues for a threshold decision to the supervising agency of a particular industry. *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir.1987). Four common factors are considered when determining whether to invoke the doctrine of primary jurisdiction: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Id.* at 1362.

It is true that "Congress channeled disputes concerning marketing orders to the Secretary in the first instance because it believed that only he has the expertise necessary to illuminate and resolve questions about them." *Block v. Community Nutrition Inst.*, 467 U.S. 340, 347, 104 S.Ct. 2450, 2454, 81 L.Ed.2d 270 (1984). However, the remedies in this case do not involve "technical questions of fact uniquely within the expertise and experience of [the USDA]...." *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 304, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976), *superseded by statute (on another ground) as stated in, Trans World Airlines,*

*Inc. v. Mattox*, 897 F.2d 773 (5th Cir.), *cert. denied*, 498 U.S. 926, 111 S.Ct. 307, 112 L.Ed.2d 261 (1990). Nor do they require complicated calculations that require the expertise of the Secretary. We therefore find that the district court did not abuse its discretion by declining to invoke the doctrine of primary jurisdiction.

## V.

Before closing, we note that a wide cross-section of the almond industry, including other handlers not directly involved in this appeal ("Amici"), filed an amicus brief requesting that we not only determine the scope of the remedies to which the handlers are entitled, but also the means by which the USDA should satisfy the judgment. Amici argue that the appropriate source from which the judgment against the USDA should be satisfied is the Judgment Fund, pursuant to 28 U.S.C. § 2414. Amici contend that if the judgment is satisfied either by imposing a supplemental assessment on the industry or by taking money from the reserve fund created pursuant to 7 C.F.R. § 981.81(c), their First and Fifth Amendment rights would be violated. None of Amici's constitutional claims are ripe and we therefore do not consider them.

Although we have held that remand to the Secretary is unnecessary for determination of the scope of the remedy, it is the province of the USDA to determine how a judgment against it should be satisfied. Certainly if Amici believe that the USDA has chosen an unconstitutional method, Amici can challenge this action before the USDA.

## VI.

The handlers request an award of attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. Attorney's fees are not appropriate in this case because, even though it did not prevail on all of its claims, the USDA brought a justified appeal from the district court's decision. We also find that the handlers are not entitled to post-judgment interest pursuant to 28 U.S.C. § 1961.

## VII.

The district court's decision that the USDA refund the full amount the almond

handlers had paid to the Board since 1980 is affirmed. There is no offset for the Board's claim of unjust enrichment. The almond handlers have a right to reimbursement for payment to third parties for creditable advertising, but there is no individual remedy for these violations. Therefore, the district court's decision that the USDA reimburse the $2.5 million that had been paid to third parties for creditable advertising is reversed. We affirm the district court's refusal to remand the issue of remedies to the Secretary for supplemental administrative record, or failure to invoke the doctrine of primary jurisdiction.

AFFIRMED in part, REVERSED in part.