**DELANO FARMS COMPANY, a Washington corporation; The Susan Neill Company, a sole proprietorship of Susan Neill; Lucas Bros. Partnership, a California partnership, Plaintiffs–Appellants,**

v.

**CALIFORNIA TABLE GRAPE COMMISSION, Defendant–Appellee.**

No. 00–16778.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2001.

Filed Jan. 27, 2003.

Brian C. Leighton, Clovis, CA, for the appellants.

Kendall L. Manock (argued), Robert D. Wilkinson (briefed), Baker, Manock, & Jensen, Fresno, CA, for the appellee.

Before: BRUNETTI, KLEINFELD and THOMAS, Circuit Judges.

KLEINFELD, Circuit Judge.

Several grape growers object to being compelled by state law to pay money for generic advertising of grapes. The Supreme Court has issued a decision that such a program for growers of nectarines, plums, and peaches did not violate the First Amendment, but a program for mushroom growers did. The only issue in this case is whether the principle distinguishing those two cases makes the grape growers more like the nectarine, plum, and peach growers, or more like the mushroom growers.

### Facts.

In 1967, a California statute called the Ketchum Act established the California Table Grape Commission for "the promotion of the sale of fresh grapes for human consumption by means of advertising, dissemination of information" and oth-

er means.[1]  The Commission's Policy Statement says that its purpose is to aid "producers of California fresh grapes in preventing economic waste in the marketing of their commodity,"[2] and in acting "in the public interest to protect and enhance the reputation of California fresh grapes for human consumption in intrastate, interstate and foreign markets."[3]  It promotes the sale of grapes, by advertising the desirability of California grapes and also by negotiating with foreign governments to prevent and eliminate trade barriers against California grapes.  It also lobbies government officials on grape-related matters and contributes to various good works such as science fair scholarships, 4–H Club grants, scholarships to children of grape field workers, and contributions to the Audubon Society.

The Commission has statutory power to levy assessments "upon all fresh grapes shipped during each marketing season" to pay for generic advertising, marketing, market research and development, and merchandising.[4]  In 1996, when this case was filed, the assessment was $0.6087 per 100 pounds, amounting to approximately thirteen cents per box.

Appellant Delano Farms sells table grapes under a brand name, not generic grapes.  It shipped about 1.7 million boxes of its branded table grapes in 1996.  On 1.7 million boxes, thirteen cents per box comes to about $221,000.

Appellants Susan Neill Company and Lucas Brothers sell grapes and kiwi fruit under the high end labels "Silver King" and "Grape Royale."  They sell their grapes to "stores that will pay more money for higher quality product, as opposed to large grocery chain stores."  They had to pay the Commission over $35,000 in assessments in 1996.

In the instant consolidated appeal, Delano Farms, Susan Neill, and Lucas Brothers sued for a declaratory judgment that the assessments violated their First Amendment rights, an injunction against collection, and for refunds.  The district court issued a preliminary injunction requiring them to pay the bulk of their assessments, subsequently modified as new authority came down from this court and the Supreme Court.  The parties eventually stipulated to dismissal of all causes of action except for the constitutional challenge to the assessments for generic advertising, which the district court decided favorably to the Commission.  The grape growers now appeal.

### Analysis.

■ We review *de novo* a district court's ruling on the constitutionality of a state statute.[5]

The tree fruit (nectarines, plums, and peaches) case, which came down in 1997 while the case at bar was in district court, is *Glickman v. Wileman Brothers & Elliott*.[6]  The marketing orders, including the assessments for generic advertising, were imposed by the federal government, not the state government as in the case at bar, pursuant to the Agricultural Marketing Act of 1937, a New Deal program still in effect.  The Act had as its purpose to

---

1.  Cal. Food & Agric. Code § 65500(f) (1967).

2.  Cal. Food & Agric. Code § 65500(g) (1967).

3.  Cal. Food & Agric. Code § 65500(e) (1967).

4.  Cal. Food & Agric. Code §§ 65600, 65650 (1967).

5.  *See California First Amendment Coalition v. Calderon,* 150 F.3d 976, 980 (9th Cir.1998).

6.  *Glickman v. Wileman Brothers & Elliott,* 521 U.S. 457, 117 S.Ct. 2130, 138 L.Ed.2d 585 (1997).

substitute "collective action" for the "aggregate consequences of independent competitive choices," including express exemption from the antitrust laws.[7] The program not only required growers to contribute to generic advertising, but it also controlled the price, quality, and quantity of the commodities that could be marketed, and the disposition of any surplus that might depress market prices. In each locality, two-thirds of the producers or the producers of two-thirds of the commodity were empowered to adopt marketing orders binding themselves and the dissenting growers. Only the generic advertising assessments were challenged.

The Supreme Court held that the assessments did not violate the First Amendment rights of the dissenting growers not to be forced to pay for speech in which they preferred not to participate. The reason was that in that particular statutory context, the generic advertising was "part of a broader collective enterprise in which their freedom to act independently is already constrained by the regulatory scheme."[8] And it was "fair to presume that they agree with the central message of the speech" because they were themselves selling fruit benefitted by it, so the body of law protecting people from being compelled to repeat what is to them an objectionable message did not apply.[9]

The mushrooms case that went the other way is *United States v. United Foods, Inc.*[10] It didn't come down until after the district court case was over, while the appeal was pending before us. It also in-

volved a federal statute, but not one that collectivized the industry. The statute provided for assessments spent mostly on generic mushroom promotion. The Court held that the First Amendment protected the mushroom grower, United Foods, from being compelled to subsidize this speech to which it objected. United Foods wanted to tell people they should buy its brand of mushrooms, not just any mushrooms.[11]

*United Foods* distinguished *Glickman* because in *Glickman* the generic advertising assessments were "ancillary to a more comprehensive program restricting marketing autonomy," but in *United Foods* there was no such "comprehensive program," just a scheme that consisted mostly of generic promotion of mushrooms.[12] The Court emphasized that the tree fruit scheme made such fruit growing "part of a broader collective enterprise" that "displaced many aspects of independent business activity," and had so displaced competition that it expressly was exempted from the antitrust laws.[13]

Constitutional law classes will doubtless enjoy the superficially droll question, "why does the Constitution prohibit the government from compelling mushroom growers, but allow government to compel nectarine, peach and plum growers, to pay for generic advertising?" The Court's distinction, though, is clear and easy to apply to the case at bar. If the generic advertising assessment is part of a "comprehensive program" that "displace[s] many aspects of independent business ac-

---

7.  *Id.* at 461, 117 S.Ct. 2130 (citing the Agricultural Marketing Agreement Act of 1937, ch. 296, 50 Stat. 246, codified as amended at 7 U.S.C. §§ 601 *et seq.* (1937)).

8.  *Id.* at 469, 470–72, 117 S.Ct. 2130.

9.  *Id.* at 470, 117 S.Ct. 2130.

10. *United States v. United Foods, Inc.*, 533 U.S. 405, 121 S.Ct. 2334, 150 L.Ed.2d 438 (2001).

11. *Id.* at 411, 121 S.Ct. 2334.

12. *Id.* at 410–11, 121 S.Ct. 2334.

13. *Id.* at 412–13, 121 S.Ct. 2334.

tivity," exempts the firms within its scope from the antitrust laws, and makes them "part of a broader collective enterprise," the assessment does not violate the First Amendment. If the program is, in the main, simply an assessment of independent and competing firms to pay for generic advertising, it does violate the First Amendment. Collectivization of the industry eliminates the otherwise extant First Amendment protection for firms' commercial speech.

Doubtless many cases will arise that are hard to place on one side or the other of the *Glickman–United Foods* distinction, but this isn't one of them. Just as in the mushroom case, the scheme does not collectivize the industry, about 90% of the assessment money is spent on generic promotional activities, and there is no antitrust exemption. Delano Farms, Susan Neill, and Lucas Brothers, sell brand name grapes and have an interest in promoting their brands rather than and to some extent at the expense of grapes in general.

▮ ˙The Table Grape Commission argues that grapes are regulated by various California statutes addressing such matters as testing equipment and standards for fruit maturity, container standards, federal regulation of grading standards (e.g., what does "extra fancy" mean?), and quality standards for exported grapes. There is a "marketing order" of the collective sort in one location, though not applicable to the issue in the case at bar. Such consumer protection and information regulations apply to much of the economy, and are far from rising to the level of the collectivization that controlled the result in

*Glickman*. Nor does the Commission attempt to show that mushrooms are not similarly regulated, and, being food products that can poison people if not properly grown, harvested, labeled and sold, they probably are.

We decided two compelled generic advertising cases after *Glickman* came down but before *United Foods* was issued: *Gallo Cattle Company v. California Milk Advisory Board*[14] and *Cal–Almond Inc. v. U.S. Department of Agriculture*.[15] Both involved marketing orders under the same New Deal statute as *Glickman*. They both upheld the assessments against First Amendment challenges. We need not decide whether the analysis in these cases is undermined by *United Foods*, the mushroom case, because they are plainly distinguishable. The distinction is that both involve marketing orders under the same 1937 statute as in *Glickman*, the nectarines case.

We of course intimate no views on economic policy. The distinction between *Glickman* and *United Foods* does not turn on evaluation of the merits of competing policy concerns. The grape growers do not operate under the 1937 statute that substituted "collective action" for the "aggregate consequences of independent competitive choices" and expressly exempted them from the antitrust laws, as did the tree fruit, almond, and milk producers in *Glickman*, *Cal–Almond*, and *Gallo Cattle*. Rather, the business practices by the instant growers are governed by a statute similar to the one at issue in *United Foods*, so they are entitled to First

**14.** *Gallo Cattle Company v. California Milk Advisory Board*, 185 F.3d 969 (9th Cir.1999).

**15.** *Cal–Almond Inc. v. U.S. Department of Agriculture*, 192 F.3d 1272 (9th Cir.1999). We had decided the case to the contrary in *Cal–Almond Inc. v. Department of Agriculture*,

67 F.3d 874 (9th Cir.1995), and the Supreme Court had remanded for reconsideration in light of *Glickman*, *Department of Agriculture v. Cal–Almond, Inc.*, 521 U.S. 1113, 117 S.Ct. 2501, 138 L.Ed.2d 1007 (1997).

Amendment protection against state compulsion to fund generic advertising.

REVERSED.